1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

FRANCISCO COLON,

               Petitioner,

   v.

N. DAWSON, Acting Warden

               Respondent.

_____/

1:07-01475 LJO SMS HC

FINDINGS AND RECOMMENDATION
REGARDING PETITION FOR WRIT OF
HABEAS CORPUS

[Doc. 2]

      Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL BACKGROUND

      Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following a conviction of second degree murder and second degree robbery in the San Diego County Superior Court.  (Exhibit 1, attached to Answer.)  Petitioner was sentenced to seventeen years to life because his sentence was enhanced for the use of a firearm during the commission of the crime.  (Id.)

      On December 12, 2005, Petitioner appeared at a subsequent parole consideration hearing before the California Board of Parole Hearings (hereinafter "Board").  (Exhibit 2, to Answer.)  Petitioner participated in the hearing and was represented by counsel.  After considering the relevant factors, the Board denied parole and deferred rehearing for three years.  Id. at 70, 73.

      Petitioner challenged the Board's decision in the state courts.  On May 31, 2006,

Petitioner filed a petition for writ of habeas corpus in the San Diego County Superior Court.  The petition was denied in a reasoned decision on July 31, 2006.  (Exhibit 3, attached to Answer.)

Thereafter, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Fourth Appellate District.  The petition was likewise denied in a reasoned decision on January 17, 2007.  (Exhibit 4, attached to Answer.)

On March 8, 2007, Petitioner filed a petition in the California Supreme Court.  The petition was summarily denied on July 25, 2007.  (Exhibit 5, attached to Answer.)

Petitioner filed the instant petition for writ of habeas corpus in the United States District Court for the Southern District of California on September 26, 2007.  The petition was transferred and filed in this Court on October 10, 2007.  Petitioner challenges the 2005 decision of the Board denying parole.  Petitioner contends that the Board violated his plea agreement, there is not "some evidence" to support the Board's findings that the commitment offense was especially cruel and callous, and he does not pose an unreasonable risk of danger to the community.

Respondent filed an answer to the petition on January 16, 2008, and Petitioner filed a traverse on January 31, 2008.  (Court Docs. 9, 10.)

FACTUAL BACKGROUND[1]

On September 27, 1988, at approximately 11:20 p.m., Petitioner entered an AM/PM mini mart, approached the victim, and pulled his shirt back to expose a gun in his pants.  When the victim stated, "You're joking," Petitioner pulled the gun out and pointed it at him and said, I'll blow your head off."  The victim then gave Petitioner just over $200.  (Exhibit 2, Transcript, at 13.)

Later that evening, officers responded to a topless bar in a location on Ohio Street, in San Diego, California.  Officers discovered that 32 year old Jose Garcia had been fatally wounded by a single bullet in the head at 1:55 a.m.

A waitress at the bar told police that Petitioner had come in with another individual,

---

[1] This information is derived from the transcript of the Board's 2005 hearing, which was taken from the Probation Officer's Report.  (Exhibit 2, attached to Answer, at 10-11.)

named Joseph Klun. She stated that Petitioner told her he had forty thousand dollars in kilos that he was going to sell in San Diego.   The manager of the nightclub said that Petitioner approached him and said he was from New York and was looking for some action.  Petitioner talked about purchasing one of the employees for $500.  At that point the victim, was nearby at a cigarette machine.  Petitioner believed that he was eavesdropping and stated, "Hey man, I"ll fuck you up man.  I've got a .357."  Petitioner then calmed down and was asked to leave the bar.  He then became belligerent toward bar employees.

Petitioner went to his truck and as Klun was driving the vehicle, Petitioner began firing several shots.  As the door to the nightclub opened, and as several people stepped out, Petitioner fired three more shots striking the victim causing his death.  Petitioner admitted to the shooting but claimed that he was not trying to hit anyone, he was only trying to keep everyone from coming after the truck.  Officers discovered $100 in the truck along with a bottle of scotch. (Exhibit 2, Transcript, at 10-13.) ____

DISCUSSION

I.        Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370

1    F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a

2    state prisoner in custody pursuant to a state court judgment, even when the petition is not

3    challenging his underlying state court conviction.'").

4         The instant petition is reviewed under the provisions of the Antiterrorism and Effective

5    Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,

6    70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

7    adjudication of the claim "resulted in a decision that was contrary to, or involved an

8    unreasonable application of, clearly established Federal law, as determined by the Supreme Court

9    of the United States" or "resulted in a decision that was based on an unreasonable determination

10   of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

11   § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

12        As a threshold matter, this Court must "first decide what constitutes 'clearly established

13   Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

14   *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

15   Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

16   of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

17   words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

18   principles set forth by the Supreme Court at the time the state court renders its decision." Id.

19        Finally, this Court must consider whether the state court's decision was "contrary to, or

20   involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

21   72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

22   grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

23   Court on a question of law or if the state court decides a case differently than [the] Court has on a

24   set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

25   at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

26   state court identifies the correct governing legal principle from [the] Court's decisions but

27   unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at

28   413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Here, the San Diego Superior Court found, in a reasoned decision, that Petitioner failed to state a prima facie case for relief.  Exhibit 3, to Answer.  The California Court of Appeal, Fourth Appellate District also found, in a reasoned decision, that Petitioner failed to state a prima facie case for relief.  Exhibit 4, to Answer.  Specifically, the Court stated:

> In reviewing the decision of the Board to deny parole, this Court's inquiry is limited to whether there is some evidence in the record to support the Board's decision based on factors specified by statute and regulation. [citation.] In this case, the Board considered and relied on appropriate factors in reaching its decision.  (Cal. Code Regs., tit. 15, § 2402.)  In addition, the Board did not recharacterize [Petitioner's] offense nor did it rely solely on immutable factors in denying [Petitioner] parole.  To the contrary, the Board relied on the facts of the crime as specified in the Board's report and as agreed to by [Petitioner]. Moreover, the Board focused its concern on [Petitioner's] extensive substance abuse history and his ability to avoid a relapse upon parole.  Such concerns are justified because [Petitioner's] substance abuse played a significant role in his commitment offense. . . ."

Id. The California Supreme Court, by its "silent order" denying review of the appellate court's

1  decision, is presumed to have denied the claims presented for the same reasons stated in the

2  opinion of the superior court.  Exhibit 5, to Answer; <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803

3  (1991).

4  II.     <u>Review of Petition</u>

5          A parole release determination is not subject to all the due process protections of an

6  adversary proceeding. <u>Pedro v. Oregon Parole Board</u>, 825 F.2d 1396, 1398-99 (9th Cir. 1987); <u>see</u>

7  <u>also</u> <u>Greenholtz v. Inmates of Nebraska Penal and Corr. Complex</u>, 442 U.S. 1, 12 (1979)

8  (explaining that due process is flexible and calls for procedural protections that particular

9  situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,

10  the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,

11  even when a protected liberty interest exists." <u>Pedro</u>, 825 F.2d at 1399; <u>Jancsek v. Oregon Bd. of</u>

12  <u>Parole</u>, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is

13  guaranteed the following process: 1) the inmate must receive advance written notice of a hearing,

14  <u>Pedro</u>, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard,"

15  <u>Greenholtz</u>, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why

16  "he falls short of qualifying for parole." <u>Id</u>. It is clear from the record these three guarantees were

17  given. He received notice of the hearing, he was heard at the hearing and he was told why he did

18  not qualify for parole.

19          "In <u>Superintendent, Mass. Correc. Inst. v. Hill</u>, the Supreme Court held that 'revocation

20  of *good time* does not comport with 'the minimum requirements of procedural due process,'

21  unless the findings of the prison disciplinary board are supported by *some evidence* in the

22  record.'  472 U.S. 445, 454 (1985), *quoting* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)."

23  <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added).

24  The Ninth Circuit has held that this same standard also extends to parole determinations. <u>Irons v.</u>

25  <u>Carey</u>, 505 F.3d 846, 851 (9th Cir.2007), *quoting* <u>Hill</u>, 472 U.S. at 457 ("We have held that 'the

26  Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due

27  process with respect to this interest if the board's decision is not supported by 'some evidence in

28  the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability

1  determination was supported by 'some evidence' in a habeas case, our analysis is framed by the

2  statutes and regulations governing parole suitability determinations in the relevant state." Irons,

3  505 F.3d at 851.  Here, the Court must look to California law and review the record. In reviewing

4  the record and determining whether the "some evidence" standard is met, the Court need not

5  examine the entire record, independently assess the credibility of witnesses, or re-weigh the

6  evidence.  Sass, 461 F.3d at 1128.

7        California law provides that after an inmate has served the minimum term of confinement

8  required by statute, the Board "shall set a release date unless it determines that the gravity of the

9  current convicted offense or offenses, or the timing and gravity of current or past convicted

10  offense or offenses, is such that consideration of the public safety requires a more lengthy period

11  of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel

12  the prisoner will pose an unreasonable risk of danger to society if released from prison," the

13  prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The

14  Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it

15  has set forth in the California Code of Regulations.

16        In denying parole in this case, the Board based its decision on the following

17  circumstances: 1) The offense was carried out in a manner which demonstrates an exceptionally

18  callous disregard for human suffering and the motive for the crime is inexplicable in relation to

19  the offense; 2) unequivocal psychological report; and 3) the District Attorney's opposition to

20  parole. See Exhibit 2 at 70-73.  Petitioner argues there is no evidence to support the finding that

21  he currently poses an unreasonable risk of danger to society if released. Review of the Board's

22  decision reveals the state court decision approving the Board's determination of unsuitability was

23  not unreasonable.

24        The first factor mentioned by the Board in its decision was the commitment offense itself.

25  Pursuant to § 2402(c)(1)(B), the Board found Petitioner had carried out the offense in a manner

26  which demonstrates an exceptionally callous disregard for human suffering. In support of its

27  finding, the Board noted that Petitioner and his crime partner, first robbed an AM/PM mini mart

28  on the evening of September 27, 1998.  Petitioner brandished a gun, threatened the store clerk,

1   and took approximately $200 in cash.  See Exhibit 2, at 70.  Later that evening, Petitioner and his

2   crime partner went to the bar and after being involved in some type of altercation, the two left.

3       Petitioner went to his vehicle and obtained the handgun which had just been used in the

4   robbery.  Out of rage, Petitioner fired several shots randomly into the air, then reloaded the gun

5   and fired several more shots, one of which struck and killed the victim.  Id. at 71.  The Board

6   pointed out that as several shots were being fired, it was certainly possible for other innocent

7   bystanders in the area to be seriously injured.  The Board noted that the motive for the robbery

8   was money, but the motive for the shooting was inexplicable,[2] other than to say it was done in an

9   attempt to escape from the people in the club.  § 2402(c)(1)(E).

10      Next, the Board considered the psychological report.  The report authored by Dr. Walker,

11  and dated May 9, 2005, was not "totally supportive" of Petitioner's release.  Exhibit 2, at 71-72.

12  The Board pointed out that the Dr. Walker opined that Petitioner "would pose a moderately low

13  to moderate risk of future violence if released from prison."  Id. at 72.  However, the Board noted

14  that Dr. Walker expressed concern regarding Petitioner's "*denial* of a substance abuse problem

15  remains so strong while he continues to attend AA and NA."  Id. at 51. (Emphasis added.)  Part

16  of the Dr. Walker's prognosis regarding Petitioner's potential risk for violence deals with his

17  abstinence from any type of substance abuse.  Id.  It was further noted that the Dr. Walker's

18  report indicated a need for a longer period of observation, evaluation, or treatment.  Id. at 75.  As

19  stated by the Court of Appeal, "The Board focused its concerns on Petitioner's extensive

20  substance abuse history and his ability to avoid a relapse upon parole."  Such concerns were

21  obviously legitimate given that one of the primary factors in Petitioner's offense was the fact that

22  he was under the influence of alcohol.

23      The Board then noted the District Attorney's opposition to parole.  Exhibit 2, at 72.  This

24  was properly considered pursuant to California Penal Code section 3042(a) and (f)(3), and Cal.

25

26      [2] As stated in In re Scott, 119 Cal.App.4th 871 (2004), the Court explained the meaning of an inexplicable

27  motive as "one that is unexplained or unintelligible, as where the commitment offense does not appear to be related to the conduct of the victim and has no other discernible purpose.  A person whose motive for a criminal act cannot

28  be explained or is unintelligible is therefore unusually unpredictable and dangerous."  Id. at 892-893.

1   Code Regs. tit. 15, § 2402(b).

2          The Board made the following findings, "the inmate continues to need self-help in order

3   to face, discuss, understand and cope with stress in a non-destructive manner and until progress

4   is made the inmate continues to be unpredictable and a threat to others.  The inmate's gains are

5   recent and he must demonstrate an ability to maintain these gains over an extended period of

6   time."  Exhibit 2, at 72-73.

7          The Board then considered various circumstances which tended to show suitability

8   pursuant to § 2402(d). Petitioner had completed the vocational upholstery, residential air-

9   conditioning, and dry-cleaning.  Id. at 73.  In addition, Petitioner has began participation in the

10  Bible-School studies, Arts in Correction, and AA/NA, which the Board encouraged Petitioner to

11  continue.  Id.

12         The Board concluded that the nature and gravity of Petitioner's offense and his

13  unequivocal psychological evaluation were indicative of a current danger to the public if

14  released. This Court cannot conclude that the state court rejection of Petitioner's claim - that the

15  Board's determination was not supported by some evidence - was unreasonable.

16         Petitioner contends that the Board violated his plea agreement by considering the facts of

17  his commitment offense in determining that he was not suitable for parole.  Petitioner does not

18  submit sufficient evidentiary support for his claim.  Although Petitioner submits a copy of his

19  plea agreement form, it does not set forth a provision that the factual circumstances may not be

20  used as a basis for determining whether Petitioner is entitled to parole, and no such promise or

21  representation may be inferred from the record here.  Petitioner submits nothing more than his

22  subjective belief of the potential benefits of the plea agreement.  At the time of the entry of

23  Petitioner's plea, the law stated, as it still does, that the Board could consider the nature of the

24  commitment offense in determining whether the prisoner is suitable for parole.  Morris v. Castro,

25  166 Cal.App.3d 33, 39, fn. 3 (1985); Ca. Pen. Code § 3041, subd. (b); Cal. Code Regs., tit. 15 §

26  2402, subd. (c)(1).  Such consideration is a crucial factor of the Board's assessment of parole

27  suitability.  Ca. Pen. Code § 3041, subd. (b); Cal. Code Regs., tit. 15 § 2402, subd. (c)(1); see e.g.

28  In re Dannenberg, 34 Cal.4th 1061, 1082 (2005).  In sum, Petitioner has failed to establish that

1  any of the express or implied terms of his plea agreement to second degree murder were violated

2  by the Board's consideration of the factual circumstances of the offense.  Accordingly,

3  Petitioner's claim is without merit.

4                                        RECOMMENDATION

5          Based on the foregoing, it is HEREBY RECOMMENDED that:

6          1.       The Petition for Writ of Habeas Corpus be DENIED; and

7          2.       The Clerk of Court be DIRECTED to enter judgment for Respondent.

8          This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,

9  United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B)

10  and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern

11  District of California.  Within thirty (30) days after being served with a copy of this Findings and

12  Recommendation, any party may file written objections with the Court and serve a copy on all

13  parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and

14  Recommendation."  Replies to the Objections shall be served and filed within ten (10) court days

15  (plus three days if served by mail) after service of the Objections.  The Finding and

16  Recommendation will then be submitted to the District Court for review of the Magistrate

17  Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file

18  objections within the specified time may waive the right to appeal the Order of the District Court.

19  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20

21

22  IT IS SO ORDERED.

23  **Dated:    July 3, 2008                              /s/ Sandra M. Snyder**
                                          UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28